**Lloyd ALVAREZ, Petitioner,**

v.

**John P. KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.**

**No. 96–CV–833(FB).**

United States District Court,
E.D. New York.

April 11, 2000.

Roland R. Acevedo, Yonkers, NY, for petitioner.

Charles Hynes, Kings County District Attorney, by Bruce D. Austern, Assistant District Attorney, Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

By petition dated February 26, 1996, Lloyd Alvarez ("Alvarez") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. This Court referred his petition to Magistrate Judge Marilyn Dolan Go, who issued a Report and Recommendation ("R & R") on January 19, 2000, recommending that the petition be denied.[1] In the R & R, Magistrate Judge Go concluded, *inter alia*, that 1) the admission of the in-court identifications of Alvarez by Ernest Cameron ("Cameron") did not violate Alvarez's due process rights, and 2) following his retrial after a successful appeal, Alvarez was not sentenced in violation of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which prohibits vindictive sentencing. Alvarez timely filed objections to the R & R, arguing that the R & R should not be adopted because: 1) the trial court erroneously failed to assess the reliability of Cameron's in-court identifications and should not have admitted them into evidence, and 2) he was entitled to a presumption that the second sentencing judge was vindictive, a presumption the government has failed to rebut, because following his second trial he received a greater sentence than he had received after his first trial.

A district court reviewing a magistrate judge's R & R applies the standards in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), which permit the court to adopt those parts of the report to which no specific objection is raised. *See Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). With respect to those parts of the report to which any party objects, the court must make a *de novo* determination. *See United States v. Raddatz*, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir.1989). If neither party objects to the report, the court may adopt the recommendations of the magistrate judge, but is not obligated to do so. *See Grassia*, 892 F.2d at 19. In light of the fact that Alvarez has only objected to certain portions of the R & R, the Court adopts without review the portions of the R & R to which he has not objected, and conducts a *de novo* review of those portions which Alvarez challenges.

## I. In-court Identifications

Although Alvarez does not object to the Magistrate Judge's conclusion that the pretrial identification procedures were not suggestive, he argues that the state court improperly admitted the allegedly unreliable in-court identifications made by Cameron at the suppression hearing and at the second trial, and that on-the-record comments made by the hearing and trial judges should be considered to be incomplete evaluations of the reliability of the identifications. Specifically, "Petitioner contends that the trial court erred by permitting an in-court identification of Petitioner without first determining whether the identification was independently reliable. Petitioner argues that the hearing or trial court was required to make specific findings on the [ ] factors before allowing identification." Petitioner's Objections at 2. "Petitioner claims that in addressing the identification issue, the court failed to assumed.

---

**1.** Familiarity with the R & R will be pre-

sess adequately the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), before making its determination, in violation of the Due Process Clause." Petitioner's Objections at 3.

The R & R correctly states the relevant law in that a court is not required to assess the reliability of an identification if the identification procedures were not suggestive. The two-step inquiry for evaluating the constitutional permissibility of in-court identification testimony based on out-of-court identification procedures " 're-quires a determination of whether the identification process was impermissibly suggestive, and if so, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification.' " *See United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir.1994) (quoting *Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir.1978)) (internal quotation marks and citation omitted).

> Where the pretrial identification procedures used with a given witness have been impermissibly suggestive, a later in-court identification by that witness will violate due process unless the in-court identification is shown to have reliability independent of those procedures.... On the other hand, if the procedures were not impermissibly suggestive, independent reliability is not a constitutionally required condition of admissibility, ... and the reliability of the identification is simply a question for the jury.

*Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir.1986) (citations omitted); *see Wong*, 40 F.3d at 1359 (quoting *Jarrett*, 802 F.2d at 42); *Bond v. Walker*, 68 F.Supp.2d 287, 303–05 (S.D.N.Y.1999) (collecting cases). Since *Jarrett*, the Second Circuit has reiterated that a reliability analysis is only necessary when the pretrial identification procedures were suggestive; if they were not, the identification is admissible without an evaluation of its reliability. *See Sims v. Sullivan*, 867 F.2d 142, (2d Cir.1989) ("Because the pretrial procedures in the instant case were not unduly suggestive, and

thus did not taint the in-court identification, we need not address the question of the reliability of the [witness]'s identification of [the defendant]."); *see also Wray v. Johnson*, 202 F.3d 515, 523 (2d Cir.2000) (evaluating reliability analysis "[i]n the context of an identification following a police procedure that was impermissibly suggestive"); *Dunnigan v. Keane*, 137 F.3d 117, 128 (2d Cir.1998) (requiring a reliability analysis "[i]f the pretrial procedures were impermissibly suggestive"); *United States v. Ciak*, 102 F.3d 38, 42 (2d Cir. 1996) ("[w]here, as here, there is the potential taint of suggestive pre-trial identification procedures," the court must assess the reliability of the identification).

A review of the record supports Magistrate Judge Go's conclusion that the pretrial identification procedures were not suggestive. As a result, the hearing and trial judges were not required to elicit evidence regarding, or assess, the reliability of the identifications. Thus, even if they did make imperfect assessments, their alleged failure does not provide a ground for *habeas* relief because the assessments were not required.

## II. Sentencing

Following his first conviction at trial before Justice John Starkey, Alvarez was sentenced to concurrent terms of imprisonment of twenty years to life on two murder counts and five to fifteen years for a robbery count. After this conviction was reversed on appeal, he was tried again before Justice Herbert Kramer, convicted, and sentenced to concurrent terms of twenty-five years to life for the murder counts, and twelve and one-half to twenty-five years for the robbery count. Alvarez alleges that his sentence following his second conviction violates *North Carolina v. Pearce*, 395 U.S. 711, 724–25, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), which held that following a reconviction after a successful appeal and a new trial, due process prohibits the imposition of a greater sentence when the sentence increase is

motivated by the sentencing judge's vindictiveness. The Court held that under certain conditions the imposition of a more severe sentence after retrial gives rise to a rebuttable presumption of vindictiveness. *Id.; United States v. King,* 126 F.3d 394, 397 (2d Cir.1997). However, since *Pearce,* the Court has held that this presumption does not arise when, following the second conviction, the defendant is sentenced by a different judge than his original sentencing judge. *See Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); *United States v. Atehortva,* 69 F.3d 679, 683–84 (2d Cir. 1995) (citing *United States v. Coke,* 404 F.2d 836, 845 (2d Cir.1968) (en banc)); *United States v. Perez,* 904 F.2d 142, 146 (2d Cir.1990) ("there is no realistic motive for vindictive sentencing" when prior reversal was based on a ruling by a judge other than the sentencing judge). "At a subsequent trial before a different judge, the evidence might well be presented in a different light, new witnesses might come forward, others might appear more credible or recite additional facts, and the judge might be impressed with items of proof that either escaped notice at the first trial or were discounted by the first trial judge." *Perez,* 904 F.2d at 145. Thus, when different sentencers impose the varying sentences, a defendant must prove actual vindictiveness on the part of the second sentencer. *See id.* at 146.

As Magistrate Judge Go determined, the presumption of vindictiveness does not arise in this case because after his second trial Alvarez was sentenced by a different judge than after the first trial. Thus, the burden of proof rests with Alvarez to produce evidence of vindictiveness by Justice Kramer, which he has failed to do. As to any implicit suggestion that Justice Kramer's views were colored by the results of Alvarez's prior trial, Justice Kramer specifically avoided any knowledge of the results of the prior proceedings, except as to the law of the case as raised at trial: "Let the record indicate at this time that the Court has not opened the court file, nor know any information about what is con-

tained therein through any source, and I've directed all the court personnel not to give me the contents, either verbally or in any other fashion." Trial Transcript, at 7. Thus, because Alvarez has failed to carry his burden of proof, his sentencing claim cannot serve as the basis for *habeas corpus* relief.

## CONCLUSION

Because Alvarez's objections are meritless, the Court adopts the Magistrate Judge's R & R. Alvarez's petition for a writ of *habeas corpus* is denied. The Court further determines that a certificate of appealability will not be issued since Alvarez has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

## *REPORT AND RECOMMENDATION*

GO, United States Magistrate Judge.

Petitioner Lloyd Alvarez, *pro se in forma pauperis,* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and, in the alternative, for a hearing to determine the merits of his petition. The petition, as well as petitioner's application for appointment of counsel, were referred by the Honorable Frederic Block to me to report and recommend. For the following reasons, I recommend that the petition be dismissed and the application for appointment of counsel be denied.

## *PROCEDURAL BACKGROUND*

*Prior State Court Proceeding*

Petitioner was convicted of two counts of murder in the second degree and one count of robbery in the first degree, New York Penal Law §§ 125.25(1), (3), 160.15(2) (McKinney 1994), following a jury trial in New York State Supreme Court, Kings County. The Honorable John Starkey entered judgment on November 12, 1980 sentencing petitioner to concurrent terms of imprisonment of twenty years to life for

the two murder counts, and five to fifteen years for the robbery count.

On appeal, the New York Appellate Division, Second Department, reversed the judgment of conviction due to the deficiencies in the court's charge. *People v. Alvarez*, 96 A.D.2d 864, 465 N.Y.S.2d 758 (2d Dept.1983). Following a bench retrial in New York State Supreme Court before the Honorable Herbert Kramer, petitioner was again of two counts of murder in the second degree and one count of robbery on the first degree. On November 15, 1984, Justice Kramer sentenced petitioner to concurrent terms of imprisonment of twenty-five years to life for the murder counts and twelve and one-half to twenty-five years for the robbery count.

On or about April 3, 1986, petitioner appealed to the New York Supreme Court, Appellate Division, Second Department ("Appellate Division"), asserting that: 1) the hearing court improperly denied his pre-trial suppression motions; 2) petitioner was denied a fair trial as a result of the improper conduct of the court and the prosecutor; and 3) petitioner's sentence was excessive. *See* Petitioner's Appeal Brief at 2. On September 4, 1986, in a *pro se* supplemental brief, petitioner raised three additional claims: 1) he was denied a fair trial and his due process rights because the trial court failed to rule on the legality of petitioner's arrest; 2) the prosecution failed to demonstrate probable cause to detain petitioner; and 3) petitioner's post-arrest statements were obtained in violation of his rights guaranteed by the Fifth Amendment to the United States Constitution. *See* Petitioner's Supplemental Appeal Brief at 2.

The Appellate Division affirmed petitioner's conviction, holding that the hearing court properly denied petitioner's motion to suppress identification evidence and that the police had probable cause to arrest petitioner. *People v. Alvarez*, 134 A.D.2d 599, 600, 521 N.Y.S.2d 497, 498 (2d Dept.1987). The Appellate Division further held that because petitioner knowingly, intelligently and voluntarily waived his Fifth Amendment rights, his post-arrest statements to the police were properly admitted. *Id.* Finally, the court rejected petitioner's claim that the trial court improperly imposed a higher sentence after his conviction on retrial. *Id.* at 499. The New York Court of Appeals subsequently denied leave to appeal. *People v. Alvarez*, 71 N.Y.2d 892, 527 N.Y.S.2d 1001, 523 N.E.2d 308 (1988).

On December 4, 1990, petitioner moved pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.20 (McKinney 1994) to set aside his sentence on the ground that it was "invalid as a matter of law" based on a new standard for assessing excessive sentence claims established by the New York State Court of Appeals in *People v. Van Pelt*, 76 N.Y.2d 156, 556 N.Y.S.2d 984, 556 N.E.2d 423 (1990). The New York Supreme Court, Kings County, denied petitioner's motion, declining to apply *Van Pelt* retroactively to petitioner's case. *People v. Alvarez*, 151 Misc.2d 697, 573 N.Y.S.2d 592 (Sup.Ct.1991). On October 16, 1991, the Appellate Division denied petitioner's application for leave to appeal.

On January 14, 1992, petitioner moved pursuant to C.P.L. § 440.10 before the New York Supreme Court, Kings County, to vacate his judgment of conviction on the grounds that the trial court lacked subject matter jurisdiction after failing to make findings on whether probable cause existed to detain defendant, and that he received ineffective assistance of hearing counsel. On December 13, 1994, the New York Supreme Court denied petitioner's motion. *People v. Alvarez*, Ind. No. 2428/79 (Sup. Ct., N.Y.County, December 13, 1994) (Kramer, J.). Justice Herbert Kramer held that despite the hearing court's failure to render findings on the issue of probable cause, the trial court acquired subject matter jurisdiction over the case when petitioner voluntarily proceeded to trial. *Id.* at 3–4. As to petitioner's ineffective assistance of counsel claim, Justice Kramer found that petitioner failed to show the requisite prejudice caused by his

attorney's decision to continue to trial without a probable cause determination. *Id.* at 4–5.

On March 8, 1995, the Appellate Division denied petitioner's motion for leave to appeal. Petitioner then appealed his § 440.10 motion to the New York Court of Appeals on March 29, 1995. On April 6, 1995, the New York Court of Appeals dismissed petitioner's motion as being unappealable under C.P.L. § 450.90(1).

*The Petition*

On February 26, 1996, petitioner filed the instant petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (1994) and a memorandum of law in support of his application. Respondent filed a memorandum of law in opposition to the petitioner's application, along with: (a) the transcript of a suppression hearing dated September 9–10, 1980; (b) the retrial transcript dated October 24, 1984 ("Retrial Tr."); (c) petitioner's brief to the New York Supreme Court, Appellate Division, dated April 3, 1986 ("Pet.'s Appeal Brief") and *pro se* supplemental brief, dated September 4, 1986 ("Pet.'s Suppl. Appeal Brief"); (d) respondent's brief to the Appellate Division, dated July 1, 1987 ("Resp.'s Appeal Brief"); (e) the November 30, 1987 decision of the Appellate Division affirming petitioner's judgment of conviction; (f) the July 16, 1991 decision of the New York Supreme Court denying petitioner's motion to set aside his sentence; (g) respondent's Affirmation and Memorandum of Law in Opposition to Petitioner's Motion to Vacate Judgment of Conviction, dated April 20, 1992; and (h) the decision of Justice Herbert Kramer dated December 13, 1994 denying petition-

er's Motion to Vacate Judgment of Conviction. On August 29, 1996, petitioner filed a *pro se* Reply to Respondent's Opposition to the Petition for a Writ of Habeas Corpus.

Petitioner asserts the following six grounds for relief in his petition: 1) the trial court lacked subject matter jurisdiction over the case because of its failure to make a pre-trial judicial determination of the probable cause issue; 2) the police lacked probable cause to arrest petitioner, thus making his post-arrest statements inadmissible at trial; 3) petitioner was denied effective assistance of hearing counsel; 4) petitioner's post-arrest statements to the police were made in violation of the Fifth Amendment to the United States Constitution; 5) the trial court improperly admitted identification evidence against petitioner; and 6) petitioner's sentence after his second trial was excessive and void as a matter of law. Since petitioner has dropped his first two claims,[1] this report will address only claims three through six of the Petition.

## FACTUAL BACKGROUND

### The Suppression Hearing and First Trial

Prior to jury selection for the first trial[2] on September 9, 1980, the prosecutor advised Justice Starkey that no ruling had been made on defendant's suppression motion under *Wade* and *Huntley* to challenge the photographic identification of petitioner by Ernest Terry Cameron ("Cameron") and to exclude defendant's post-arrest statements. Hrg. at 21, 23, 89; *see United States v. Wade*, 388 U.S. 218, 87 S.Ct.

1. By letter dated August 22, 1999, attorney Roland Acevedo informed this court that he had been retained on July 17, 1999 to represent petitioner in his petition for federal habeas relief. (Doc. # 18). Mr. Acevedo stated in his letter that petitioner wished to withdraw claims one and two of his habeas petition. On August 31, 1999, this court directed petitioner to explain whether he was withdrawing these claims with prejudice or with the intention to seek further state court remedies. By letter dated September 2, 1999, Mr. Acevedo

advised that petitioner did not intend to seek further state remedies for claims one and two, and withdrew these claims with prejudice. (Doc. # 19).

2. Petitioner and his co-defendant, Terrance Mason, were originally scheduled to be tried together, but the trial judge subsequently granted Mason's motion to sever. Transcript of hearing dated September 9–10, 1980 ("Hrg.") at 151.

1926, 18 L.Ed.2d 1149 (1967); *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). Defense counsel then made an oral application for suppression under *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) on the issue of whether there was probable cause to detain his client at the police station for questioning. Hrg. at 22. Counsel further advised that he and the prosecutor preferred to address the *Wade* issue first, since it "would lead us to the question of *Dunaway* as to whether there would be probable cause to hold Mr. Alvarez, or to bring him in for the purpose of questioning." *Id.* at 23.

The hearing then proceeded, with the court first hearing testimony only on the identification issue and then oral argument. *Id.* at 25, 88–90. After the trial judge denied the motion to suppress the in-court identification by Cameron, he deferred argument on the *Dunaway* claim to give counsel an opportunity to examine witnesses on the circumstances of petitioner's detention leading to his statements. *Id.* at 90–91. At the conclusion of the hearing held the following day, Judge Starkey denied the motion to suppress petitioner's statements. *Id.* at 137.

At the hearing, Detective Silas Bartley, Ernest Cameron, and Assistant District Attorney Mark Feldman testified to the following.

In the afternoon of May 4, 1979, two men entered the Magna Paint Company located at 821 Classon Avenue, Brooklyn, N.Y. and, while robbing the store, shot and killed its owner, Mr. Andre Guthman. *Id.* at 26. In the course of his investigation into the homicide of Mr. Guthman, Detective Silas Bartley of the New York City Police Department's 13th Homicide Zone in Brooklyn spoke with Jeffrey Davis ("Davis") on June 18, 1979.[3] Davis told Detective Bartley that at approximately 2:30 p.m. on May 4, 1979, he saw petitioner cross Franklin Avenue towards Classon

Avenue accompanied by a man Davis knew as "Terrance". Davis saw petitioner carrying a shotgun in a plastic bag. *Id.* at 27, 29. Davis later observed petitioner and Mason, who was then holding the shotgun, running from the direction of Classon Avenue. *Id.* at 29–30. On June 21, 1979, Davis, who had known petitioner for seventeen years since they attended first through fifth grades together, made an out-of-court identification of petitioner and Terrance Mason, through a photographic array. *Id.* at 30–31.

Detective Bartley obtained a second out-of-court identification of petitioner and Mr. Mason on June 21, 1979 from Ernest Cameron, who was thirteen at the time of the hearing. *Id.* at 63. Cameron testified that on May 4, 1979, while sitting in a car parked in front of the Magna Paint Company, he observed petitioner and Mr. Mason leave the store quickly. They walked approximately ten feet toward Cameron, and then proceeded past him toward Lincoln Place. *Id.* at 69–70, 79–83.

Cameron also testified that approximately seven weeks later, he was asked by Detective Bartley to go to the 77th Precinct to look at some pictures of possible perpetrators of the crime. *Id.* at 83, 85. After viewing the same sixteen photographs shown to Davis, Cameron identified the photographs of petitioner and Mr. Mason as the individuals he had seen walking out of the Magna Paint Company on May 4, 1979. *Id.* at 31–32, 73–74.

Detective Bartley also testified that at approximately 4:30 p.m. on June 27, 1979, he received a call from Davis that petitioner would be in the area of Franklin Avenue and Lincoln place. *Id.* at 42. At around 5:30 p.m., after Davis pointed out petitioner, Detective Bartley arrested petitioner in front of petitioner's residence at 533 Lincoln Plaza. *Id.* at 42, 93. The detective handcuffed the petitioner on the sidewalk and orally advised him of his Fifth Amend-

---

**3.** Jeffrey Davis died prior to the September 9, 1980 suppression hearing. Hrg. at 21. Over the objections of petitioner's hearing counsel, Davis' statements to Detective Bartley were admitted at the suppression hearing. Hrg. at 26, 30.

ment rights. *Id.* at 94–95. Though he did not recall the exact wording of the *Miranda* warnings given to petitioner on the street, Detective Bartley testified that he advised petitioner of all his Fifth Amendment rights. *Id.* at 111, 113–14. Detective Bartley did not interrogate petitioner in the squad car en route to the 77th Precinct. *Id.* at 96.

At the precinct, Detective Bartley again informed petitioner of his Fifth Amendment rights, which the detective read from a printed form. *Id.* at 97. The detective asked petitioner after reading each right whether petitioner understood and noted petitioner's affirmative response. *Id.* at 98. Petitioner then read and signed the form. *Id.* at 99. During the interrogation that followed, petitioner made incriminating statements which Detective Bartley reduced to a written statement that petitioner then read and signed. *Id.* at 104–08. Detective Bartley then contacted Assistant District Attorney Mark Feldman ("ADA Feldman") at approximately 8:00 p.m. *Id.* at 128–29.

After ADA Feldman arrived at the 77th Precinct at approximately 10:00 p.m., Detective Bartley told him that petitioner had waived his Fifth Amendment rights and had made an inculpatory statement. *Id.* at 123, 131, 133–34. Mr. Feldman proceeded to take a second statement from petitioner before a court stenographer with Detective Bartley present. *Id.* at 123–25. Mr. Feldman testified that he did not conduct any off-the-record questioning of petitioner, and that petitioner was cooperative and appeared calm throughout. *Id.* at 124, 126.

Petitioner admitted in both statements [4] to his involvement in the robbery of the store and murder of Mr. Guthman. He stated that he and his co-defendant went to the Magna Paint Company with the intent to commit a robbery. *Id.* at 148–49.

Petitioner carried a shotgun loaded with one shell in a plastic bag. *Id.* at 149; Resp.'s Appeal Brief at 4. Putting down the shotgun, petitioner knocked on the door and asked the woman who answered for a job. *Id.* After entering, petitioner grabbed the woman. *Id.* at 5; Hrg. at 150. Mason, who also entered, pulled the shotgun out of the bag. Guthman then entered the room and in the ensuing struggle, the shotgun went off. *Id.* Guthman fell and petitioner and Mason left, after grabbing the woman's handbag. *Id.*

*The Second Trial*

At retrial following reversal of petitioner's first conviction, petitioner renewed his motion to suppress. After this motion was summarily denied by Justice Grajales, Justice Herbert Kramer, the judge before whom a bench trial would be held, refused to review the decision. Retrial Tr. at 5.

Dawn Noel, who was at the Magna Paint Company premises with her five-year-old son on the day of the robbery and shooting testified. *Id.* at 18. Her testimony essentially described the same events set forth in petitioner's statements. After hearing a knock, she saw a man through the window who asked for a job. *Id.* at 19. She replied that no jobs were available, but the man said he had been told to come back because he needed a job. *Id.* Ms. Noel let him in to the front office and, when she turned her back to him, the man grabbed her from behind. *Id.* As her brother-in-law, Guthman, approached from the hallway, she heard a shot and saw Guthman fall. *Id.* at 19–20. She then observed a second man holding a long gun. *Id.* at 20–21. The man with the gun told Ms. Noel and her son to leave and she went to a back room. *Id.* 21–22. A short time later, Ms. Noel returned to the front room and found that the two men were gone. *Id.* at 22. Ms. Noel was called to the police

---

4. The first statement is quoted in full in Respondent's Appeal Brief dated July 1, 1987 filed in petitioner's appeal from his second trial. *See* Resp.'s Appeal Brief at 4–5. Portions of the second statement before ADA Feldman were addressed prior to commence-

ment of the first trial during a discussion which was held to see if redactions could be made to avoid the need to sever the trial of petitioner's co-defendant, Terrance Mason. Hrg. at 148–50.

station several times after the shooting to view pictures and a lineup, but at retrial could neither recall what happened nor whether she saw petitioner at that time. *Id.* at 29–30.

Detective Bartley, ADA Feldman and Ernest Cameron [5] also testified at the retrial. Resp.'s Appeal Brief at 8.

## DISCUSSION

### I. Ineffective Assistance of Counsel

■ Petitioner asserts that he was deprived of his Sixth Amendment right to effective assistance of counsel because his attorney failed to object to the absence of a judicial ruling on the issue of probable cause at his suppression hearing.[6] Specifically, petitioner claims that his hearing counsel should have moved for a "Writ of Mandamus" to compel the trial court to make a judicial determination of all pretrial motions to suppress before commencement of trial, as required by C.P.L. §§ 710.40(3), 710.60(6). Habeas Pet. at 24. Petitioner also claims his attorney at retri-

al was ineffective for failing to review the original trial transcripts to ensure that a ruling had been rendered on the probable cause issue. *Id.* at 23.

A defendant challenging his conviction based on ineffective assistance of counsel has the burden of showing that (a) the counsel's performance fell below an objective standard of reasonableness, and (b) a reasonable probability exists of a different result in the proceeding but for the errors of counsel. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987). In evaluating counsel's performance under the first prong of *Strickland*, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. A petitioner "must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at

---

**5.** The portion of the retrial transcript containing Cameron's testimony is not part of the record submitted herein. However, petitioner discusses Cameron's testimony both at the suppression hearing and at the second trial in Petitioner's Statement of Facts submitted with the petition herein. Petitioner's § 2254 Habeas Corpus Petition ("Habeas Pet.") at 9–14, 43–46. Petitioner notes that Cameron did not have a good recollection of the incident and that, although Cameron remembered seeing two men walking from the Magna Paint Company on the day of the shooting, he could neither recall the descriptions he gave to the police nor identify petitioner in court as one of the two men. *Id.* at 44–46 (citing Retrial Tr. at 139, 155, 156, 162); Petitioner's Memorandum of Law at 36–40.

Respondent does not dispute petitioner's characterization of Cameron's testimony.

**6.** As noted above, petition first raised this claim in his C.P.L. § 440.10 Motion to Vacate Judgment in the New York State Supreme Court. Since petitioner's claim of ineffective assistance of counsel is based on facts entirely within the record, he should have raised it on direct appeal. *See, e.g., Arce v. Smith*, 889 F.2d 1271 (2d Cir.1989), *cert. denied*, 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990);

*People v. Cooks*, 67 N.Y.2d 100, 500 N.Y.S.2d 503, 491 N.E.2d 676 (1986). Thus although petitioner has exhausted this claim, he is procedurally barred from federal habeas review since he failed to raise it in the state court on direct appeal. However, this court is not precluded from addressing the merits of his claim despite the procedural default since the last state court rendering a judgment in the case did not "clearly and expressly" rest its denial of the ineffective assistance claim on a state procedural bar. *See, e.g., Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Taylor v. Kuhlmann*, 36 F.Supp.2d 534 (E.D.N.Y.1999). Indeed, Justice Kramer of New York Supreme Court addressed the merits of the ineffective assistance claim in his December 13, 1992 decision on grounds which implicitly concerned petitioner's Sixth Amendment right to effective counsel. Furthermore, the orders of the New York Appellate Division and New York Court of Appeals denying petitioner's applications for leave to appeal are presumed not to be based on a procedural default. *See Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Since respondent does not raise a procedural default challenge to this claim, I recommend that this Court review the merits of petitioner's ineffective assistance of hearing counsel claim.

690, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). A court evaluating the reasonableness of an attorney's conduct should not second-guess "a course of action (or inaction) that seems risky, unorthodox or downright ill-advised." *Tippins v. Walker,* 77 F.3d 682 (2d Cir.1996). The court should evaluate the effectiveness of counsel in the context of trial counsel's overall performance throughout the trial. *Kimmelman v. Morrison,* 477 U.S. 365, 386, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

■ The second prong of the *Strickland* test requires the petitioner to prove that his attorney's purportedly deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 692–93, 104 S.Ct. 2052; *see also Thomas v. Scully,* 854 F.Supp. 944, 961–62 (E.D.N.Y.1994). A petitioner cannot establish prejudice simply by demonstrating that counsel's errors only had some "conceivable effect" on the outcome of the case. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052. Rather, a petitioner must show that absent counsel's errors, the result would likely have been different, considering the totality of the evidence. *Id.* at 694, 104 S.Ct. 2052; *see also U.S. ex rel. Roche v. Scully,* 739 F.2d 739, 742–44 (2d Cir.1984). Where a petitioner's claim is principally based upon counsel's ineffectiveness in litigating a Fourth Amendment violation, petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman,* 477 U.S. at 375, 106 S.Ct. 2574.

■ In the instant case, petitioner cannot show either unreasonableness in his hearing counsel's performance or actual prejudice caused by counsel's alleged ineffectiveness. The suppression hearing transcript indicates that although petitioner's hearing counsel initially argued against the admissibility of petitioner's inculpatory statements because of his illegal detention under *Dunaway,* counsel did not press this claim after the court denied the other grounds for suppression. Hrg. 137. However, the record clearly shows that petitioner's hearing counsel adequately challenged the admissibility of both an in-court identification of petitioner, as well as petitioner's post-arrest statements. Counsel vigorously cross-examined the Government's witnesses concerning the police procedures used to identify petitioner in an effort to cast doubt on the reliability of the identification. Hrg. at 36, 75. After that motion was denied on the record, hearing counsel sought to suppress petitioner's confession to the police based on an involuntary waiver of his Fifth Amendment rights. Again, hearing counsel competently cross-examined the Government's witnesses in an attempt to show that inadequate warnings were given pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Hrg. at 112–116, 126. When the court denied the motions to suppress petitioner's statements and Cameron's identification testimony, counsel proceeded to trial without further arguing the *Dunaway* claim.

Such a performance by trial counsel is far from being constitutionally deficient. Given the importance of the in-court identification of Ernest Cameron and petitioner's post-arrest statements to the prosecution's case, it was reasonable for hearing counsel to focus on these two grounds for suppression. *See Cappiello v. Hoke,* 698 F.Supp. 1042, 1053 (E.D.N.Y.), *aff'd,* 852 F.2d 59 (2d Cir.1988) (decision to move under Fifth Amendment, rather than Fourth Amendment, was not constitutionally ineffective in light of overall record of counsel's performance). As the Second Circuit observed in *United States v. Vegas,* 27 F.3d 773 (2d Cir.), "[a]s is often the case when convicted defendants complain after-the-fact of their lawyers' trial performance, we find that the choices made by the attorney were matters of trial strategy; because counsel's strategy was a reasonable one, these choices do not show incompetence." *Id.* at 777–78, *cert. denied,* 513 U.S. 911, 115 S.Ct. 284, 130 L.Ed.2d 200 (1994).

Moreover, petitioner cannot establish any prejudice from his counsel's failure to obtain a ruling under *Dunaway*. Recognizing that detention for custodial questioning constituted a "seizure" triggering the protections of the Fourth Amendment, the Supreme Court in *Dunaway* held that the police could not do so without probable cause. *Dunaway*, 442 U.S. at 207, 216, 99 S.Ct. 2248. The court also found that the question of the voluntariness of a confession "is merely a 'threshold requirement' for Fourth Amendment analysis ... [and] if the Fifth Amendment had been violated, the Fourth Amendment issue would not have to be reached." *Id.* at 217, 99 S.Ct. 2248 (quoting *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)).

Once the trial court found that petitioner voluntarily made his statements, the only remaining issue was whether Detective Bartley had probable cause for arrest. There is little dispute that there was probable cause.[7] After interviewing Davis and Cameron and obtaining their positive identifications of petitioner's photograph, Detective Bartley had ample probable cause to believe petitioner was one of the participants in the murder and robbery. Given the legality of his arrest and voluntariness of his waiver, petitioner has no viable *Dunaway* claim. Thus, he has no basis to complain of his trial attorney's performance in not obtaining an express ruling under *Dunaway*.

In any event petitioner cannot demonstrate any prejudice from the purported failure to pursue a *Dunaway* claim. The prior state court rulings make clear that the courts would have rejected a *Dunaway* claim.

In the appeal after the first conviction, the Appellate Division found that evidence elicited at the suppression hearing sufficiently established probable cause to detain petitioner. *See Alvarez*. On retrial, Justice Kramer expressly noted that: "[t]he court, had there been a *Dunaway* hearing, is satisfied that there was proba-

ble cause for the arrest, and the predicate result of the obtaining of statements was valid." *See Alvarez*, Ind. No. 2428/79 at 4–5 (quoting Retrial Tr. at 180). Since these state court pronouncements rule out any possibility that petitioner's motion to suppress based on a Fourth Amendment violation would have been granted, petitioner cannot show *any* prejudice resulting from hearing counsel's failure to pursue this ground for suppression. *See Kimmelman*, 477 U.S. at 365, 377, 106 S.Ct. 2574.

For the same reasons, petitioner cannot show either unreasonable conduct or prejudice from his new attorney's purported failure on retrial to review the suppression hearing transcripts to obtain a ruling on his *Dunaway* claim. Petitioner has not specifically alleged how his attorney in the second trial failed to review the suppression hearing transcripts. Indeed, the retrial transcript suggests otherwise—that counsel clearly understood all pertinent legal and factual issues as well as the prior proceedings. Counsel moved to suppress the inculpatory statements made to ADA Feldman on probable cause grounds prior to the commencement of petitioner's second trial. Retrial Tr. at 3. Counsel also raised a detailed objection to the summary denial by Justice Grajales of petitioner's suppression motion which sought to appeal the denial before proceeding to trial. *Id.* at 3–10. Notwithstanding the trial court's refusal to review the suppression motion decision, counsel still sought thorough cross-examination of Detective Bartley to establish a factual basis to challenge the findings of probable and voluntariness of petitioner's statement. *Id.* at 60–70.

In short, the record reflects that defense counsel for both trials were well prepared, had a good understanding of the facts and legal issues in the case, and performed well within the bounds of acceptable professional norms. Furthermore, petitioner cannot show that their representation resulted in any prejudice. Consequently, pe-

---

7. Counsel for petitioner withdrew petitioner's claim that there was no probable cause for arrest, as discussed above. *See supra,* at 143 note 1.

titioner's claim of ineffective assistance of both hearing and trial counsel should be dismissed.

## II. *Fifth Amendment Claim*

Petitioner claims that at the time of his arrest he neither received proper warnings concerning his Fifth Amendment privilege against self-incrimination, nor relinquished that privilege through a voluntary, knowing and intelligent waiver. In particular, he points to the inability of Detective Bartley at the pre-trial suppression hearing to recount specifically the exact warnings he gave to petitioner immediately after arrest. Habeas Pet. at 28. Petitioner also argues that given his reading and writing proficiency, he was unable to comprehend fully the relevance of the written Fifth Amendment rights presented and therefore, could not knowingly and intelligently waive his Fifth Amendment rights. *Id.* Finally, petitioner claims that ADA Feldman failed to ascertain whether petitioner fully understood his Fifth Amendment rights prior to taking a second statement from petitioner at the stationhouse. *Id.* at 29.

 Under 28 U.S.C. § 2254(d), federal courts reviewing a habeas petition must accord a "presumption of correctness" to a state court's finding of fact after a hearing on the merits, unless the conditions for certain enumerated exceptions are met, or unless the state court findings are not "fairly supported" by the record as a whole.[8] *See, e.g.,* 28 U.S.C. § 2254(d) (1994); *Ventura v. Meachum,* 957 F.2d 1048, 1054 (2d Cir.1992). The district court need not give deference to the state court determinations when "material facts were not adequately developed at the State court hearing," or when the "fact finding procedure employed by the State

court was not adequate to afford a full and fair hearing." *See* 28 U.S.C. § 2254(d)(2) –(3) (1994); *see also Pagan v. Keane,* 984 F.2d 61, 64 (2d Cir.1993). The district court also has discretion to hold a hearing on material facts because of the existence of a factual dispute, the strength of the evidence offered, the thoroughness of the prior proceedings, and the nature of the state court determination. *Id.* at 64 (citations omitted). However, the petitioner always bears the burden to "establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d) (1994).

In the instant case, petitioner's claim that Detective Bartley may have given him inadequate *Miranda* warnings immediately after his arrest is a matter of historical fact which was fully addressed at the pre-trial suppression hearing. At this hearing, the Government offered substantial evidence that Detective Bartley advised petitioner of his rights under *Miranda,* both immediately after arrest and later at the stationhouse. Hrg. at 110–11. Furthermore, the Government presented evidence that no interrogation of petitioner occurred between his arrest and his subsequent signing of the Fifth Amendment waiver at the 77th Precinct. Hrg. at 96. Petitioner's attorney extensively cross-examined Detective Bartley concerning what was said to petitioner after the initial arrest. The court found Detective Bartley's testimony to be credible on this question and denied this part of petitioner's suppression motion.

Aside from merely asserting that a reasonable doubt exists as to whether Detective Bartley gave him proper *Miranda* warnings, petitioner points to no convincing evidence that the factual determination

---

**8.** After petitioner filed his federal habeas petition, Congress amended the provisions in § 2254 governing review of a state court's factual findings and legal conclusions. The statute now requires that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1) (Supp.

1999). However, the stricter provisions of subsection (e)(1) are not to be applied retroactively and hence, the prior statutory provision governs the instant petition. *See Nelson v. Walker,* 121 F.3d 828 (2d Cir.1997); *see also Boria v. Keane,* 90 F.3d 36 (2d Cir.1996), *cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

of the state court on this issue was erroneous. Accordingly, there is no basis for this court to depart from the presumption of correctness normally accorded state court determinations of fact. *See* 28 U.S.C. § 2254(d) (1994).

In determining whether a defendant validly waived his or her Fifth Amendment rights, the court must make a two-part inquiry. First, the court must decide whether the waiver was the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Second, the waiver must have been made with the "full awareness of the right being waived and of the consequences of waiving that right." *See United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir.1995). Since determinations must be made in light of the totality of the circumstances surrounding the interrogation, the court should assess the defendant's "characteristics, the conditions of the interrogation, and the conduct of law enforcement officials." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir.1991); *see also Moran*, 475 U.S. at 421, 106 S.Ct. 1135.

Courts have generally found that no single element of the accused's individual characteristics is dispositive when deciding whether a valid waiver was executed. Defendants with limited cognitive abilities or below average I.Q. levels may nonetheless be capable of a knowing and intelligent *Miranda* waiver. *See United States v. Murgas*, 967 F.Supp. 695, 707–08 (N.D.N.Y.1997) (defendant with below average I.Q., limited education, and impaired reading ability validly waived his Fifth Amendment rights when defendant was able to read printed form with listed rights, initialed each sentence of the rights warning and signed the waiver). Even evidence of a defendant's intoxication with alcohol or a controlled substance does not preclude a finding of a knowing and intelligent waiver provided that they appreciate the nature of the waiver. *See, e.g., Avincola v. Stinson*, 60 F.Supp.2d 133, 160

(S.D.N.Y.1999) (valid waiver despite physical manifestations of drug use by defendant at the time *Miranda* warnings were given); *United States v. DiLorenzo*, 94–CR–303 (AGS), 1995 WL 366377 at *8–9 (S.D.N.Y. June 19, 1995) (defendant who stated he understood his rights and signed waiver form made knowing and intelligent waiver despite allegedly being under the influence of alcohol).

Applying these standards to the circumstances surrounding petitioner's confession, the trial court properly found that petitioner's Fifth Amendment waiver was validly made. First, petitioner alleges that his age and deficient reading and writing skills at the time of his arrest prevented him from fully comprehending the nature of his Fifth Amendment waiver. As Detective Bartley testified at the suppression hearing, he read aloud each of the individual *Miranda* warnings to the petitioner from a printed sheet, and at the conclusion of each right inquired if petitioner understood its meaning. Hrg. at 97–98. After the petitioner responded affirmatively for each right, he examined the written waiver and then signed it in Detective Bartley's presence. The detective was also aware from his interview of Davis that petitioner had at least a primary school education. *Id.* at 102–03. Neither the evidence elicited at the suppression hearing nor petitioner's argument support his claim that his age and educational background prevented him from fully comprehending the meaning of the written waiver. Even though petitioner signed the waiver form by writing his name in printed letters, Detective Bartley testified that he observed petitioner signing the form. In addition, Detective Bartley testified he later saw petitioner reading the statement which the detective had reduced to writing in longhand before petitioner signed it. *Id.* at 99. Thus, there is no dispute that the signatures in question were the petitioner's.

Even accepting petitioner's argument that he had marginal education, minimal

reading and writing skills are not sufficient, without more, to negate a finding that petitioner had the capacity to make an informed and valid waiver of his Fifth Amendment rights. *See, e.g., United States v. Male Juvenile,* 121 F.3d 34, 40 (2d Cir.1997) (juvenile defendant with second grade reading comprehension level found to have understood the nature of right which he waived); *United States v. Burrous,* 147 F.3d 111, 116 (2d Cir.) (sixteen year old defendant with limited formal education knowingly waived *Miranda* rights), *cert. denied,* 525 U.S. 939, 119 S.Ct. 358, 142 L.Ed.2d 295 (1998). Given the testimony at trial, there is likewise no dispute that petitioner had sufficient capabilities to comprehend both his rights and the contents of his statements.

Furthermore, at the time the waiver was signed, there was no evidence of the petitioner being in poor physical or mental health. Indeed, ADA Feldman testified that at all times during his questioning petitioner appeared calm and cooperated with the interrogation. Hrg. at 126.

The other relevant factor in the determination of a waiver's validity involves an assessment of whether the waiver was free of coercion by law enforcement officials. Detective Bartley testified that petitioner was seated, without handcuffs, in a typical sized interrogation room during the waiver and subsequent questioning. Hrg. at 96–97. The interrogation by Detective Bartley occurred sometime between 5:30 p.m., the time petitioner was transported to the 77th Precinct, and 8:00 p.m. when the detective called ADA Feldman. Thus the interrogation lasted less than two and a half hours, during which time the petitioner remained unhandcuffed in the same interview room. Under the totality of the circumstances, the hearing judge properly found that petitioner's Fifth Amendment waiver and confession was not the product of a coercive police environment.

Furthermore, there was no evidence that Detective Bartley or ADA Feldman used physical intimidation or psychological coercion in obtaining petitioner's Fifth Amendment waiver. Petitioner's mother was present when he was arrested by Detective Bartley, and petitioner accompanied Bartley to the precinct with no resistance. Hrg. 93–94. Detective Bartley further testified that prior to obtaining petitioner's signed waiver, he did not tell petitioner of any other evidence implicating petitioner in the crime. Hrg. at 115–16. Nor is there any evidence that Detective Bartley promised leniency in exchange for petitioner's Fifth Amendment waiver.

Considering the totality of the circumstances, based on a review of the record, the trial court properly found that petitioner knowingly, voluntarily and intelligently waived his Fifth Amendment rights.

### III. *Due Process Identification Claim*

In his fifth claim for relief, petitioner asserts that he was denied his due process rights under the United States Constitution because the in-court identifications made by Ernest Cameron at the suppression hearing and at his second trial were unreliable. He argues that since the hearing and trial courts made no specific findings concerning the length of time Cameron had to view the perpetrator, the degree of attention paid to the perpetrator, Cameron's level of certainty regarding petitioner, and the length of time between the crime and Cameron's identification, Cameron's identification testimony was unreliable. Hence, admission of the identification was a denial of his due process rights. Habeas Pet. Memorandum of Law at 41.

Admission at trial of identification testimony that is the result of law enforcement procedures which were so suggestive as to create a "substantial likelihood of irreparable misidentification," violates the due process rights of an accused. *See, e.g., Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401, (1972) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)); *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In assessing whether in-court identification testimony was prop-

erly admitted, the court must conduct a two-part inquiry. It must first determine whether the pretrial identification procedures were impermissibly suggestive of the accused's guilt, and if it finds undue suggestiveness, the court must determine whether other evidence supports the reliability of the identification, independent of the suggestive procedures. *See, e.g., Neil,* 409 U.S. at 199; *Dunnigan v. Keane,* 137 F.3d 117, 128 (2d Cir.1998), *cert. denied,* 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998). Where a court does not find unduly suggestive procedures were used, "independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." *Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986) (citations omitted); *see also Sorenson v. Superintendent, Fishkill Correctional Facility,* No. 97–CV–3498 (NG), 1998 WL 474149 at *5 (E.D.N.Y. August 7, 1998).

Under federal habeas corpus review, the issue of whether an out-of-court identification procedure is so suggestive that it violates a defendant's due process rights is a mixed question of law and fact. *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). Consequently, a state court's finding on the overall constitutionality of challenged identification testimony is not entitled to the presumption of correctness under 28 U.S.C. § 2254(d). However, the findings of historical fact which underlie the state court's conclusion on this question are entitled to the statutory presumption of correctness by the reviewing federal habeas court. *See, e.g., Sumner,* 455 U.S. at 597 & n. 10, 102 S.Ct. 1303; *Jarrett,* 802 F.2d at 42; *Nieves v. State of New York,* No. 97 CIV 2121(JGK), 1998 WL 599716 at *5 (S.D.N.Y. September 10, 1998).

Applying these principles to the instant petition, the trial court properly found that admission of the challenged identification testimony did not violate petitioner's due process rights. In summarily denying petitioner's motion to suppress Earnest Cameron's identification testimony, the hearing court implicitly adopted as its findings the facts noted by ADA Roth to support his argument that the police did not use impermissibly suggestive procedures. As ADA Roth argued at the hearing:

> I believe that, based upon the testimony of the detective and Terry Cameron, there was no police taint. He was shown 16 photographs of persons with similar facial characteristics and racial characteristics, and there was no suggestive conduct on the part of the police. He was just asked to look at the photographs and see if he recognizes anybody.
>
> Court: Yes, I agree with you, Mr. Roth. Motion is denied.

Hrg. at 90.

These findings of fact as to the pretrial identification procedures used are entitled to the statutory presumption of correctness under 28 U.S.C. § 2254(d). *See Jarrett,* 802 F.2d at 42. These facts were amply developed at the suppression hearing and have not been challenged by petitioner. Cameron testified that approximately seven weeks after the incident, he was shown a photo array of eight people with similar physical characteristics and was asked by Detective Bartley whether he recognized any of the individuals. Hrg. at 73–74, 83, 85. Cameron unequivocally identified petitioner after carefully considering the photo array. *Id.* There was no testimony that petitioner's photograph "stood out" in some way from the other photographs presented to Cameron. In addition, there was no evidence that Detective Bartley did anything to focus Cameron's attention on petitioner's photograph or pressure Cameron into making an identification. The police did not converse with Cameron either in the car while en route to the precinct or during his examination of the photographs. *Id.* at 85, 86.

In light of the findings of historical fact to which this Court must defer, the trial court properly found that the procedures used were not so suggestive as to create substantial likelihood of irreparable misidentification. Petitioner was shown a total of sixteen photographs consisting of

eight different individuals of similar facial characteristics. The size of the array was not so impermissibly small as to render the presentation itself unfairly suggestive. *See United States v. Boston,* 508 F.2d 1171, 1177 (2d Cir.1974) (eight photographs not impermissibly suggestive), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2401, 44 L.Ed.2d 669 (1975). *United States v. Bennett,* 409 F.2d 888, 898 (2d Cir.) (six photographs not impermissibly suggestive), *cert. denied,* 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969). Likewise, the fact Cameron viewed the photographs seven weeks after the incident is not sufficient to support a finding of impermissible suggestiveness. *See United States v. Jacobowitz,* 877 F.2d 162, 168 (2d Cir.) (ten months between the crime and the identification not dispositive of undue suggestion), *cert. denied,* 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Nor was there anything suggestive about the manner in which Detective Bartley presented the photographs or questioned Cameron.

Thus, the hearing court properly found that the procedures used in presenting the photo array were not impermissibly suggestive. In light of this finding the hearing court did not need to address the question of whether the identification was independently reliable. *See, e.g., Jarrett,* 802 F.2d at 42; *Sorenson,* 1998 WL 474149, at *5; *see also People v. Burts,* 78 N.Y.S.2d 20, 24, 571 N.Y.S.2d 418, 420, 574 N.E.2d 1024 (1991); *People v. Bolden,* 197 A.D.2d 528, 529, 602 N.Y.S.2d 212, 213 (2d Dept.1993) ("in the absence of proof of suggestiveness, the defendant was not entitled to a further inquiry to ascertain whether [the eyewitness] has an independent source for making an in-court identification"). The hearing court accordingly did not make findings, sought by petitioner

herein, concerning the length of time Cameron had to view petitioner, the degree of attention Cameron paid to the perpetrator, Cameron's level of certainty concerning petitioner, or the length of time between the crime and Cameron's identification. Such findings are relevant only to the determination of whether otherwise inadmissible identification testimony can still be admitted based on the identification's independent reliability.[9]

Petitioner's other contention that a pretrial lineup would have been substantially more reliable than the photographic identification is also without merit. There is no constitutional right to a lineup for defendants in criminal cases. If the procedures which were actually used at the identification were not impermissibly suggestive, "it is immaterial whether any other or different procedures could have been pursued." *Boyd v. Henderson,* 555 F.2d 56, 59 (2d Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977); *see also Jarrett,* 802 F.2d at 45. Given the hearing court finding that the procedures used in identifying petitioner through the photographic array were not suggestive, the lack of a lineup is not relevant.

Since the identification procedures used to identify petitioner were not impermissibly suggestive, petitioner's claim that admission of the identification testimony was a denial of his due process rights is without merit.

## IV. *Excessive Sentence Claim*

Petitioner's sixth claim is that his resentencing to a prison term longer than that imposed by the original trial court was invalid as a matter of law under *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct.

---

9. The factors to be examined in evaluating whether the identification testimony is independently reliable are:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil,* 409 U.S. at 199, 93 S.Ct. 375.

As discussed above, once a court finds that identification procedures are not impermissibly suggestive, independent reliability is a question left for the fact finder at trial. *Jarrett,* 802 F.2d at 42.

2072, 23 L.Ed.2d 656 (1969). In support of his claim, petitioner argues that since no new facts or events were introduced at his retrial, the enhancement of his sentence was not justified by any "extraordinary circumstances." Habeas Pet. Memorandum of Law at 47. Petitioner claims that the absence of an affirmative statement of the reasons for the greater prison term imposed by the resentencing court failed to rebut the presumption of vindictiveness applicable to this sentence. *Id.* at 48.

In *Pearce*, the Supreme Court recognized that there is no absolute constitutional bar to the imposition of a harsher sentence after a new trial. *Pearce*, 395 U.S. at 723, 89 S.Ct. 2072. However, where a defendant is reconvicted following a successful appeal and a new trial, due process prohibits the imposition of a greater sentence when the increase is motivated by vindictiveness on the part of the sentencing judge. *Id.* at 724–25, 89 S.Ct. 2072. The imposition of a more severe sentence after retrial gives rise to a presumption of vindictiveness, which can be rebutted by the reasons for the new sentence given by the court. *Id.* at 726, 89 S.Ct. 2072. These reasons must be "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing." *Id.*

The Supreme Court subsequently restricted application of the prophylactic rule announced in *Pearce* in later cases involving harsher sentences on retrial. In *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), the Supreme Court explained that, as with other " 'judicially created means of effectuating the rights secured by the [Constitution],' " *Pearce* should be restricted to instances where its " 'objectives are thought most efficaciously served.' " *Id.* at 138, 106 S.Ct. 976 (quoting *Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976)). The Court emphasized that the primary "evil" which the *Pearce* Court sought to prevent was not the imposition of enlarged sentences after a new trial, but the vindictiveness of a sentencing judge.

*Id.* Thus, when different sentencers impose the varying sentence, a defendant must prove actual vindictiveness on the part of the second sentencer. *Id.; see also United States v. Perez*, 904 F.2d 142 (2d Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 270, 112 L.Ed.2d 226 (1990). Actual vindictiveness must be proved by a preponderance of evidence. *See, e.g., Alabama v. Smith*, 490 U.S. 794, 799–800, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), *Pabon v. Hake*, 763 F.Supp. 1189, 1194 (E.D.N.Y. 1991).

In *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the Supreme Court also refused to presume vindictiveness when the second court in a two-tiered trial system imposed a higher sentence. The Court found that there is no more reason to presume vindictiveness than there is reason to presume leniency in the first sentencer simply because a different sentencer imposes a more severe penalty than the first. *Id.* at 117, 92 S.Ct. 1953. As the Court reasoned, "the trial *de novo* represents a completely fresh determination of guilt or innocence. It is not an appeal on the record." *Id.* The Court recognized that since the trial *de novo* court was most likely unaware of the sentence imposed in the original trial court, it cannot be said that the new sentence was an "enhancement" of the original sentence. *Id.*

The presumption of vindictiveness announced in *Pearce* is not applicable in the instant case. Petitioner was tried on retrial before Justice Herbert Kramer, a new judge who sentenced petitioner to concurrent terms of twenty-five to life imprisonment on two counts of murder in the second degree and twelve and one-half to twenty-five years on the robbery in the first degree count. At retrial, Justice Kramer was not asked to find error in the first trial judge's work, but rather he was simply providing a new forum for the determination of petitioner's guilt or innocence. *See Colten*, 407 U.S. at 117, 92 S.Ct. 1953. In fact, Justice Kramer avoid-

ed acquiring any knowledge of the prior proceedings. *See* Retrial Tr. at 7.

Moreover, Justice Kramer stated at sentencing that he was imposing the new sentence based on petitioner's extensive criminal history, and his view that of petitioner is an "impulsive, remorseless, violent individual." Sentencing Minutes at 8, attached as Exhibit H of Petitioner's January 31, 1995 Letter to Appellate Division filed with Petitioner's Reply to respondent's memorandum. On direct appeal from the second conviction, the Appellate Division found no actual vindictiveness in light of the retrial court's statement that it was "not aware of the prior sentence and was imposing its sentence based on the defendant's past criminal history and the nature of the instant offense." *Alvarez,* 134 A.D.2d at 600, 521 N.Y.S.2d at 499. Other than his misplaced reliance on the presumption of vindictiveness, petitioner has not offered proof of any actual vindictiveness on the part of Justice Kramer.

Finally, petitioner argues for application of the holding in *People v. Van Pelt,* 76 N.Y.2d 156, 556 N.Y.S.2d 984, 556 N.E.2d 423 (1990), a case in which the New York Court of Appeals found that under the New York State Constitution, the presumption of vindictiveness for the imposition of a higher sentence after retrial was still applicable when a different sentencer imposed the sentence. *Id.* at 161, 556 N.Y.S.2d 984, 556 N.E.2d 423. Violation of such a state constitutional rule is not a basis for *federal* habeas review, which is limited to review of petitions based on "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1994). In any event, the New York State Supreme Court declined in a prior appeal by petitioner to apply *Van Pelt* retroactively to petitioner's case. *See Alvarez.*

Given that there is no presumption of vindictiveness as to petitioner's second sentence and no proof of actual vindictiveness on the part of the sentencing judge, petitioner's claim for relief on this ground should be denied.

### V. *Petitioner's Other Application*

In light of the fact that petitioner has retained counsel on his federal habeas petition, I recommend that his application for assignment of counsel be denied.

In addition, given the foregoing recommendations, I further recommend that petitioner's request for a hearing be denied. None of these issues raised by petitioner present a factual dispute.

### *CONCLUSION*

I respectfully recommend that petitioner's application for a writ of habeas corpus be denied and the application for appointment of counsel be denied.

A copy of this report and recommendation is being mailed on this date. Any objections must be filed with the Clerk of the Court, with a copy to the undersigned, on or before February 8, 2000. Failure to file objections within the specified time waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

SO ORDERED.

January 19, 2000.