**Luis MALDONADO, Petitioner–Appellee,**

v.

**Charles SCULLY and Green Haven Correctional Facility Respondent–Appellant.**

No. 1004, Docket 95–2598.

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1996.

Decided June 11, 1996.

Darrell B. Fields, Legal Aid Society, New York City, for petitioner-appellee.

Leonard Joblove, Assistant District Attorney, Brooklyn, NY (Charles J. Hynes, District Attorney, Roseann B. MacKechnie, Assistant District Attorney, on the brief), for respondent-appellant.

Before: OAKES and McLAUGHLIN, Circuit Judges, and OWEN, District Judge.[1]

OWEN, Senior District Judge:

In 1982, appellee Luis Maldonado was found guilty by a jury in New York State Supreme Court as an accessory to the second degree murders of Victor Martinez and Roberto Toro under New York Penal Law § 125.25(1). Maldonado was sentenced to consecutive terms of imprisonment of fifteen years to life on each conviction. Almost five years later, in 1987, the Appellate Division modified the judgments, reversing Maldonado's conviction for the murder of Martinez, and dismissing that count of the indictment. Maldonado's conviction for Toro's murder, however, was affirmed. The New York Court of Appeals denied Maldonado's application for leave to appeal. In 1989, pursuant

1. Honorable Richard Owen, of the United States District Court for the Southern District of New York, sitting by designation.

to 28 U.S.C. § 2254, Maldonado filed a petition for habeas corpus in the United States District Court for the Eastern District of New York, Raymond J. Dearie, Judge, challenging the sufficiency of the evidence supporting his involvement in the Toro murder. In 1995, almost six years later, the petition was granted after argument. Charles Scully, Superintendent of the Greenhaven Correctional Facility, (hereafter referred to as "the State") appeals under 28 U.S.C. § 2253 and Fed.R.App.P. 22(b), which provide for review of a final order in a habeas corpus proceeding. For the reasons set forth below, we reverse the judgment of the district court and dismiss Maldonado's petition for a writ of habeas corpus.

From the evidence at trial, the jury could and did find that Maldonado, Evaristo Aponte, and Anderson Garcia knew each other well and were frequent companions in their Brooklyn neighborhood.[2] On November 9, 1980, Maldonado and Aponte had an argument with Victor Martinez on the street in front of Maldonado's apartment building at 136 South 2nd Street. They claimed that Martinez owed them money for "materials", presumably drugs, that he had been selling for them. When Martinez told them that he did not have the money but would get it if he could, Maldonado told Martinez that he had better come up with the money, otherwise Maldonado and Aponte would shoot him. Aponte chimed in, telling Martinez that whatever Maldonado wanted to do was all right with him.

One Lisa Rizzo, who also lived in Maldonado's apartment building, testified that on the next day, November 10, Maldonado and Aponte, together with an unidentified third man, sat in Maldonado's car parked in a vacant lot across the street from the apartment building while Martinez and Roberto Toro stood on the street corner talking to each other. Garcia approached Martinez and Toro, spoke with them, and then walked to the front of Maldonado's apartment building. From there, he called to Maldonado in the car, and Maldonado leaned out of the car and spoke with him. During this conversation, Garcia pointed to the corner where Martinez and Toro were still standing, and thereafter, in some sequence, Garcia, Martinez, and Toro all went into Maldonado's apartment building. Some twenty minutes later, according to Rizzo, as she was climbing the stairs to her apartment, Toro ran past her down the stairs followed by Garcia, who was leaving a vacant apartment and tucking a handgun into his pants. Garcia and Toro got into a van and drove away with Maldonado and Aponte following in Maldonado's car. The lock on the door of the vacant apartment Garcia had exited was broken, and Rizzo entered and found Martinez on the floor, shot to death.[3]

Another trial witness, Raphael Perez, testified that the day after that, November 11, he was parked in a car behind another car, containing Maldonado, Aponte, and Garcia, parked on the street in front of Maldonado's apartment building. Maldonado was in the front passenger seat, Aponte was in the driver's seat, and Garcia was in the back. Toro walked toward the driver's—or left hand—side of the Maldonado car. Both Aponte and Maldonado were looking in Toro's direction, and when Toro was within six feet of the car, a shot was fired from the driver's seat, mortally wounding Toro.[4] The car immediately drove away.

As observed earlier, the jury found Maldonado guilty as an accessory to both murders. The Appellate Division, as noted, held that the evidence did not establish beyond a reasonable doubt Maldonado's guilt as to the Martinez murder, stating that the facts did not exclude "every reasonable hypothesis of innocence 'to a moral certainty.' "[5] Howev-

---

2. This closeness was certainly highlighted by the fact that Maldonado and Aponte appeared to be involved in drug trafficking.

3. Martinez had been shot with a small-caliber revolver. The jury certainly could have drawn the inference that Martinez had not paid Maldonado the money he owed to Maldonado.

4. Toro was shot with a shotgun.

5. "Whether the expression used is 'beyond a reasonable doubt,' or 'to a moral certainty,' is immaterial, for they are synonymous...." *People v. Bonifacio*, 190 N.Y. 150, 82 N.E. 1098, 1100 (1907). For a discussion of the relationship between "to a moral certainty" and "beyond a reasonable doubt," *see, e.g., People v. Hicks*, 91 Misc.2d 205, 397 N.Y.S.2d 571, 572 (N.Y.Sup.Ct. 1977).

er, as to Toro's murder, the Appellate Division stated that, "[f]rom the evidence of Maldonado's conduct, the jury could reasonably have inferred that he had knowledge of Martinez's murder and that together with Aponte, he aided Garcia [6] in killing the witness to that murder...." *People v. Maldonado*, 126 A.D.2d 670, 510 N.Y.S.2d 712, 714 (2 Dept.1987). On March 13, 1987, the New York Court of Appeals denied both parties leave to appeal to that court.

The court below granted Maldonado's petition for a writ of habeas corpus, and stated that "[t]he only evidence to support Maldonado's actual involvement in the Toro murder and his intent to join in that murder is his presence with two frequent neighborhood companions in the car from which the shot was fired." *Maldonado v. Scully*, No. CV 894149, slip. op. at 7 (E.D.N.Y. Aug. 15, 1995). The court then concluded that "[w]hile the circumstantial evidence, taken as a whole, may suggest that Maldonado was involved in either or both of the murders, a suggestion or even a probability that he was involved cannot support a conviction for intentional murder," and that "[a]lthough the State has articulated the necessary inferential chain connecting petitioner to the Toro murder, the critical link is too fragile to support the weight of conviction." *Id.* at 7–8.

■ A writ of habeas corpus is available to any person held "in custody in violation of the Constitution or laws ... of the United States." 28 U.S.C. § 2241(c)(3). In reviewing a district court's decision on a petition for habeas corpus, we are not bound by the findings of the district court, but instead apply a *de novo* standard of review. *See Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985); *Williams v. Bartlett*, 44 F.3d 95, 99 (2d Cir.1994).

■ Looking first to state law for the elements of the crime, *Jackson v. Virginia*, 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 2792 n. 16, 61 L.Ed.2d 560 (1979), New York law

provides, in relevant part, that "a person is guilty of murder in the second degree when ... [w]ith intent to cause the death of another person, he causes the death of such person...." N.Y. Penal Law § 125.25(1). New York law further provides that an individual may be held criminally liable as an accessory or accomplice to an offense committed by another when, "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00. Thus, for Maldonado to have been an accessory, the evidence must have been sufficient to permit the jury to find that he solicited or aided Aponte in the shooting of Toro, and that he did so with the intent to kill.

■ Evidence to this end is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789, and all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor. *United States v. Rosa*, 11 F.3d 315, 337 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994); *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir.1986). Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir.1994), and this evidence must not be reviewed piecemeal, but rather as a whole. *United States v. Khan*, 53 F.3d 507, 513 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 697, 133 L.Ed.2d 655 (1996). Finally, assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues. *Rosa*, 11 F.3d at 337; *United States v. Parker*, 903 F.2d 91, 97 (2d Cir.), *cert. denied*, 498 U.S. 872, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990).

6. (Footnote by the Court): The testimony of Raphael Perez, the witness to the Toro shooting, was that it was Aponte who fired the shot, and not Garcia, as the Appellate Division opinion recites. The misdesignation in that opinion is, however, of no consequence, legal or otherwise, to the conclusion the Appellate Division reached then, or that we reach now; Maldonado was still an accessory.

Viewed in its totality, the circumstantial evidence established that Maldonado and Aponte had threatened to kill Martinez; that Garcia, after speaking with Martinez, separated himself from Martinez and had some dialogue with Maldonado while pointing across the street to Martinez and Toro; that some minutes later, Garcia killed Martinez in an empty apartment with Toro, unfortunately for him, a witness to that killing; that Toro, as an eyewitness, became a threat to Maldonado, Garcia and Aponte; that the next day, while Maldonado, Garcia, and Aponte sat in a car as Toro approached, Maldonado was looking across Aponte—and his shotgun—at Toro as the latter neared the left side of the car, before Aponte pulled the trigger. Thus, Maldonado accompanied Aponte to the scene of Toro's murder; he had a motive to commit the crime; he had an awareness, the jury could find beyond a reasonable doubt, reasoning backwards from the presence of the shotgun and its ultimate use, that Aponte was going to shoot Toro; and that Maldonado was there in order to render whatever support or assistance was needed. Accordingly, we disagree with the court below, concluding that the jury had sufficient evidence before it for it to find beyond a reasonable doubt that Maldonado shared knowing and intentional complicity in Aponte's murderous act, and we therefore conclude that the evidence at trial supported Maldonado's conviction as an accessory to the Toro murder.

Maldonado makes two arguments in support of the order below. The first is that no direct evidence established Maldonado's commission of any "overt act" in aid of Aponte's crime. Guilt may, however, be proved entirely by circumstantial evidence, *see Sureff*, 15 F.3d at 228, and a lack of direct evidence does not preclude a conviction on circumstantial evidence. Maldonado's contention that the evidence proved only his presence ignores the principle, noted above, that the evidence must be viewed in its totality, and not in piecemeal fashion. *See Khan*, 53 F.3d at 513.

Maldonado's second argument is that the evidence was insufficient to show that he, Aponte, and Garcia shared an interest adverse to Toro, and that he therefore shared the requisite intent to kill that Aponte possessed. However, as discussed above, the evidence was clearly sufficient to permit the reasonable inference that Maldonado, Aponte, and Garcia had a single, mutual, shared interest and intent in eliminating Toro as a witness to the prior day's murder in which all three were implicated to varying degrees.[7]

In sum, we conclude that the evidence was constitutionally sufficient to establish Maldonado's guilt as an accessory to the Toro murder. Accordingly, we vacate the order below granting his petition for a writ of habeas corpus, reinstate the conviction, and remand to the district court.

OAKES, Senior Circuit Judge, dissenting:

I respectfully dissent. I think that Judge Dearie had it right.

In the first place, he correctly set out the standards governing federal habeas corpus review of state convictions by pointing out that a petitioner challenging a state conviction bears a heavy burden, one that requires upholding a conviction if, after viewing the evidence in the light most favorable to the prosecution, the court finds that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979).

Judge Dearie then properly held that all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor. The court also must bear in mind that guilt may be established entirely by circumstantial evidence and that evidence must not be reviewed piecemeal but, rather, as a whole, giving due deference to the jury's assessments of the weight of the evidence and the credibility of witnesses.

---

7. Maldonado, with Aponte's approval, had threatened Martinez's life. Immediately after conversing with Maldonado, having pointed at Martinez on the street, Garcia carried out Maldonado's threat by killing Martinez.

With this legal backdrop, Judge Dearie proceeded to analyze the evidence—correctly, in my view—as follows. He found that the circumstantial evidence established that Maldonado and Aponte had threatened to kill Martinez; that Garcia, after speaking with Martinez, separated himself from Martinez and talked with Maldonado while pointing across the street to Martinez and Toro; and that thereafter Garcia killed Martinez in an empty apartment with Toro present. Judge Dearie found that Toro, as a witness to the killing, thereby became a threat to Maldonado, Garcia, and Aponte.

He nevertheless went on to find that the only evidence to support Maldonado's actual involvement in the Toro murder was Maldonado's presence with Aponte and Garcia in the car from which the shot was fired. The car did not belong to Maldonado. He could just as easily have been a surprised passenger as an accessory to murder. Judge Dearie pointed out that there was no evidence suggesting Maldonado was a lookout or present to identify Toro. Certainly Aponte needed no help identifying Toro because Aponte had seen Toro the previous day when Toro and Garcia fled the scene of the Martinez murder.

As the judge said, even if a jury could reasonably infer that Aponte killed Toro to protect those involved in Martinez's murder, the only evidence to implicate Maldonado was his isolated threat to Martinez the night before, a threat which, as a matter of state law, the appellate division found insufficient to sustain Maldonado's conviction for that murder. In short, Judge Dearie found that evidence of presence combined with slim evidence of motive could not substitute for evidence of intent to kill. In the judge's view, no reasonable juror could be satisfied that the state had met its burden to prove beyond a reasonable doubt that petitioner intended to kill Toro. In saying that, I think that Judge Dearie said it all.

Our panel majority, however, has added factors on which it relies to sustain the conviction. It says that Maldonado "had an awareness, the jury could find beyond a reasonable doubt, reasoning backwards from the presence of the shotgun and its ultimate use,

that Aponte was going to shoot Toro; and that Maldonado was there in order to render whatever support or assistance was needed." *Supra* at 36. This supposed "reasoning backwards" is, in my view, no substitute for hard evidence. As Judge Dearie put it,

> While the State need not satisfy this Court that every reasonable hypothesis of innocence has been eliminated by the evidence—an obviously insurmountable task in this Court's view—readily available inferences of innocence must counsel the Court's assessment of whether a reasonable juror could find beyond a reasonable doubt that the petitioner intended to kill Toro. Although the State has articulated the necessary inferential chain connecting petitioner to the Toro murder, the critical link is too fragile to support the weight of conviction.

I would affirm.